IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| **CAROL D. MAININI,** : | |
| : | |
| **Plaintiff,** : | |
| : | **CIVIL ACTION FILE NO.** |
| **v.** : | **3:10-CV-00046-AJB** |
| : | |
| **MICHAEL J. ASTRUE,** : | |
| *Commissioner, Social Security* : | |
| *Administration*, : | |
| : | |
| **Defendant.** : | |

**ORDER AND OPINION**[1]

This matter is before the Court on Plaintiff's Second Motion for Reconsideration, filed under the Court's leave on September 25, 2012. [Doc. 20]. For the reasons below, the motion is **GRANTED**.

*I.   Procedural History*

Plaintiff filed an application for federal disability insurance benefits ("DIB") on October 24, 2005, alleging disability commencing on June 11, 2005.[2]  [Record

---

[1]   The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [*See* Dkt. Entries dated May 17, 2010]. Therefore, this Order constitutes a final Order of the Court.

[2]   Title II of the Social Security Act provides for DIB.  42 U.S.C. § 401 *et seq*. Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for supplemental security income benefits for the disabled (hereinafter "SSI"). Title XVI

(hereinafter "R") 53]. She claimed that back problems, Morton's neuroma,[3] and anxiety limit her ability to work. [R64]. Plaintiff's application was denied initially and on reconsideration. [R20-21]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). [R34]. An evidentiary hearing was held before an ALJ on July 2, 2008. [R263-82]. On September 2, 2008, the ALJ issued a decision in which he found that Plaintiff had acquired sufficient quarters of coverage to remain insured through December 2009 but also found that she had not been disabled through the date of his decision. [R12-19]. Plaintiff sought review of the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on February 18, 2010, rendering the ALJ's decision the final decision of the Commissioner. [R5-8].

---

claims are not tied to the attainment of a particular period of insurance disability. *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). The relevant law and regulations governing the determination of disability under a claim for DIB are identical to those governing the determination under a claim for SSI. *Davis v. Heckler*, 759 F. 2d 432, 435 n.1 (5th Cir. 1985). Under 42 U.S.C. § 1383(c)(3), the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI. In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI. Different statutes and regulations, however, apply to each type of claim. Plaintiff has only applied for DIB. Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claim.

[3]     Morton's neuroma is an injury to the nerve between the toes that causes thickening and pain. PubMed Health, Morton's neuroma, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0004542 (last visited 09/13/12).

2

Plaintiff then filed a civil action in this Court on April 16, 2010, seeking review of the Commissioner's final decision. [Doc. 3]. The answer was filed on August 19, 2010, and the transcript was filed on August 20, 2010. [Docs. 5-6]. Plaintiff filed her brief on October 22, 2010, [Doc. 10], and Defendant filed a response on November 10, 2010, [Doc. 11]. Plaintiff also filed a reply brief. [Doc. 13]. The undersigned held a hearing on December 7, 2010. [*See* Doc. 14]. On August 12, 2011, the Court issued an Order affirming the final decision of the Commissioner, and the Clerk entered judgment the same day. [Docs. 15-16].

On September 12, 2011, Plaintiff filed a Motion to Alter or Amend Judgment. [Doc. 17]. She filed the motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and requested that the Court reconsider its conclusions regarding two out of the three issues Plaintiff raised in her initial brief. [*Id*. at 1]. On September 15, 2011, the Commissioner filed what was essentially a single-page response stating only that the Commissioner opposed Plaintiff's motion and relied on his previously filed response brief and the Court's decision. [Doc. 18].

On September 24, 2012, the Court entered an Order in which it found that Plaintiff's motion for reconsideration was meritorious but that the Court lacked jurisdiction to grant the motion because it had been untimely filed. [Doc. 19]. Because

3

neither party had briefed the timeliness motion, the Court granted Plaintiff fourteen days' leave to file a motion for reconsideration regarding the timeliness issue only and allowed the Commissioner fourteen days to file a response brief. [*Id*. at 17]. The Court further stated that if it should determine upon such motion that it may properly consider the out-of-time motion for reconsideration, it would direct the Clerk to renew the motion. [*Id*. at 7].

## II.     *Second Motion for Reconsideration*

Plaintiff timely filed a motion for reconsideration on the timeliness issue. [Doc. 20]. She argues that because the August 12, 2011, Clerk's Judgment affirming the decision of the Commissioner was not entered onto the docket until August 15, 2011, the start of the time period within which she could file a Rule 59(e) motion started on August 15 rather than August 12, and her motion for reconsideration was therefore timely. [Doc. 20-1 at 1-3 (citing Fed. R. Civ. P. 58(c)(2))]. She argues that in the alternative, the Court may consider her motion as a timely Rule 60 motion. [Doc. 20-1 at 3-4 (citing *Rice v. Ford Motor Co.*, 88 F.3d 914, 918 (11th Cir. 1996))]. The Commissioner did not respond to Plaintiff's second motion for reconsideration. [*See* Dkt.].

4

For good cause shown and because the motion is unopposed, the Court **GRANTS** the second motion for reconsideration, [Doc. 20]. *See* LR 7.1(B), NDGa ("Failure to file a response shall indicated that there is no opposition to the motion"). The Court therefore **DIRECTS** the Clerk to **RENEW** Plaintiff's first motion for reconsideration. [Doc. 17].

### *III.   Renewed Motion for Reconsideration*

#### *A.   Legal Standard*

"The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact. . . . A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam) (brackets, quotations, and citations omitted); *accord Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1267 (11th Cir. 1998) (providing that a Rule 59 motion for reconsideration "should not be used to raise legal arguments which could and should have been made before the judgment was issued").

This Court's Local Rules further provide that "[m]otions for reconsideration shall not be filed as a matter of routine practice"; instead, such motions shall only be filed when "absolutely necessary." N.D. Ga. R. 7.2E. "Such absolute necessity arises where

there is '(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.' " *United States, ex rel. Powell v. Am. InterContinental Univ.*, 756 F. Supp. 2d 1374, 1377 (N.D. Ga. 2010) (Story, J.) (quoting *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003) (Martin, J.)). "An error is not 'clear and obvious' if the legal issues are 'at least arguable.' " *Reid v. BMW of N. Am.*, 464 F. Supp. 2d 1267, 1270 (N.D. Ga. 2006) (Shoob, J.) (quoting *United States v. Battle*, 272 F. Supp. 2d 1354, 1358 (N.D. Ga. 2003) (Evans, J.)). "[A] motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Powell*, 756 F. Supp. 2d at 1377 (quoting *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995) (O'Kelley, J.)). Moreover, "a motion for reconsideration may not be used 'to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind.' " *Powell*, *id.* (quoting *Bryan*, 246 F. Supp. 2d at 1259). Denial of a Rule 59 motion for reconsideration is reviewed for abuse of discretion. *Arthur*, 500 F.3d at 1343.

6

AO 72A
(Rev.8/8
2)

### *B.     Discussion*

The Court would be hard-pressed to find that Plaintiff adhered to the legal standard applicable to motions for reconsideration in that she did not pinpoint specific clear error but instead challenges the Court's determinations on five grounds—which essentially amounts to a broad request to relitigate two-thirds of the case.[4] Nevertheless, in its review of Plaintiff's many allegations of error, the Court has determined that a May 2008 medical record of the treatment Plaintiff received from Dr. Nick Gabbay, [R197], undermines the ALJ's finding that the disabling sitting, standing, and walking limitations set out by Dr. Michael Fortson, one of Plaintiff's

---

[4] Plaintiff first argues that the record evidence does not contradict the disabling sitting, standing, and walking limitations set out by Dr. Michael Forston, one of Plaintiff's treating physicians, and therefore the ALJ should not have discounted Dr. Fortson's opinion. [Doc. 17 at 2]. Second, Plaintiff argues that the Court erred in relying on *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011) in determining that an ALJ may reject a treating doctor's opinion when that opinion is not supported by the evidence, even when the evidence does not include another doctor's opinion. [Doc. 17 at 3]. Third, Plaintiff contends that both the ALJ and the Court improperly disregarded evidence of Plaintiff's annular tears. [*Id*. at 3-6]. Fourth, Plaintiff argues that the ALJ's opinion was internally inconsistent, in that he found that her medically determinable impairments could reasonably be expected to produce her symptoms but then found that she was not disabled. [*Id*. at 6]. Fifth, Plaintiff contends that the Court was incorrect in determining that the conservative treatment she received was a reason to reject Dr. Fortson's opinion. [*Id*. at 6-8].

7

treating physicians, was not supported by other record evidence and therefore was entitled to little weight.

After Plaintiff's initial hearing, the ALJ issued an opinion in which he found that Plaintiff's foot and hip problems were severe impairments. [R14]. He determined, however, that she had the residual functional capacity ("RFC") to perform light work "in regards to which she could lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk 2 hours; and sit 6 hours in an 8-hour workday." [R14]. He therefore concluded that Plaintiff could perform jobs that existed in significant numbers in the national economy. [R18].

In the initial brief Plaintiff filed in support of her Social Security appeal, Plaintiff pointed out that in a Functional Capacity Evaluation dated June 23, 2008, Dr. Fortson set out disabling functional limitations: (1) in an eight-hour workday, Plaintiff could sit for less than two hours, stand for less than two hours, and walk for less than two hours, [R212]; (2) Plaintiff could not get through an eight-hour work day (with normal breaks) on a sustained basis without lying down, [R212]; and (3) Plaintiff's condition would cause her to miss work three or more times per month, [R214].[5] [Doc. 10 at 18-

---

[5] As Plaintiff points out, functional limitations are disabling when they preclude work on a " 'regular and continuing basis,' mean[ing] 8 hours a day, for 5 days a week, or an equivalent work schedule." [Doc. 10 at 18 (quoting Social

8

19]. Plaintiff argued in her opening brief that the ALJ erred by rejecting Dr. Fortson's opinion without articulating good cause for doing so. [*Id*. at 18]. Among the many reasons Plaintiff contended that the ALJ erred, she argued that the limitations Dr. Fortson set out were supported by Dr. Gabbay's May 2008 findings of multiple severe abnormalities in Plaintiff's feet, [R197].[6] [Doc. 10 at 19].

After reviewing the ALJ's opinion, the parties' briefs, and the record in this case, and after hearing oral argument, the undersigned found that the ALJ had properly

---

Security Ruling ("SSR") 96-8p)].

[6] Plaintiff also contended that the ALJ erred in failing to give Dr. Fortson's opinion controlling weight without expressly applying a six-factor analysis to decide what non-controlling weight to give it, and she also contended that the ALJ impermissibly rejected Dr. Fortson's opinion based on the ALJ's own medical opinion. [*Id*. at 18-21]. She also argued that the limitations Dr. Fortson set out were supported by a September 2005 lumbar spine MRI showing a disc bulge abutting the nerve root, [R148], and a June 19, 2008, lumbar spine MRI showing non-compressive bulges with annular tears, [R208]. [Doc. 10 at 19]. Plaintiff further contended that the ALJ's reasons for giving Dr. Fortson's opinion little weight were inadequate to contradict Dr. Fortson's medical opinion because (1) after successful physical therapy in 2005, later notes indicate that Plaintiff still had stiffness and pain that were waking her up, [R133, 135, 126]; (2) the lack of a recommendation to have surgery does not, as a matter of law, correlate to lack of a severe physical impairment; (3) despite the ALJ's assertion that no one except Dr. Fortson imposed limitations on Plaintiff, the record shows that in November 2005, a nurse practitioner found significant restriction in Plaintiff's range of motion and found that her back and neck limitations interfered with her activities of daily living, [R201-03]; and (4) "it appears the neurosurgeon, two orthopedists, and two pain specialists who treated [Plaintiff] simply were not asked about her functional limitations." [Doc. 17 at 19-20].

9

applied the law and that substantial evidence supported his conclusion that Dr. Fortson's opinion regarding Plaintiff's limitations was entitled to little weight. [Doc. 15 at 35-44]. The Court affirmed the ALJ's decision and directed entry of final judgment in the Commissioner's favor. [Doc. 15 at 58]. Upon reconsideration, the Court finds that it erred in doing so.

In reviewing an ALJ's decision to discount the opinion of a treating physician, the Court is to consider whether the decision is supported by substantial evidence. *Muhammad ex rel. T.I.M. v. Comm'r of Social Sec.*, 395 Fed. Appx. 593, 598 (11th Cir. Sept. 3, 2010) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). "[T]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *accord MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. § 404.1527(c)(2) (providing that, generally, more weight is given to opinions from treating sources). The Eleventh Circuit has found "good cause" to afford less weight to a treating physician's opinion where the opinion is conclusory or inconsistent with the physician's own medical records, the evidence supports a contrary finding, or the evidence supports a contrary conclusion. *Simone v. Comm'r of Soc. Sec. Admin.*, 465 Fed. Appx. 905, 909-10

10

(11th Cir. Apr. 10, 2012) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), and *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)); *Phillips*, 357 F.3d at 1240-41 (" '[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.").

In his written decision, the ALJ had considered Dr. Fortson's opinion but gave it "little weight as it is not supported by the bulk of the record as a whole." [R17]. Specifically, the ALJ pointed to evidence that (1) in 2005, Plaintiff met all of her goals in physical therapy and was noted to do an excellent job, [R116-29]; (2) in an examination dated November 28, 2005, Plaintiff demonstrated only mild pain around the neck and shoulders, [R144-46]; (3) in 2006, injections alleviated hip and knee pain, and neurological and musculoskeletal examinations were normal with no pain, full range of motion, and 5/5 strength throughout, [R193-96]; (4) a June 2008 lumbar MRI showed multiple-level degenerative disc disease with generally mild bulges, no definite cord or nerve root compression, and only mild facet degenerative changes, [R208]; (5) Plaintiff had only been treated with medications and injections, and no surgery had ever been recommended to her; and (6) no limitations were ever imposed on her aside

11

from the functional capacity assessment Dr. Fortson completed. [R16-17]. The ALJ also noted that state agency medical consultants had opined that Plaintiff retained the RFC to perform medium work with no more than occasional climbing and stooping, [R156-63, 185-92], which the ALJ found was reasonable based on the evidence in the record at the time. [R17]. The ALJ therefore gave the state agency consultant opinions "some weight." [R17].

In its initial Order and Opinion, the Court determined that the ALJ did not err in finding that Dr. Fortson's limitations relating to sitting, standing, and walking were not supported by the record and therefore were entitled to little weight. [Doc. 15 at 41]. In examining the evidence upon Plaintiff's motion for reconsideration, however, the Court finds that Dr. Gabbay's records directly contradict the ALJ's findings that Plaintiff received only conservative treatment, never received a recommendation to have surgery, and never received functional limitations other than those imposed by Dr. Fortson. [*See* R197, 204-07]. Dr. Gabbay's records start in January 2004, when Plaintiff visited with complaints of a painful ball of the left foot with pains shooting up her leg. [R207]. Physical examination and x-rays revealed "severe lateral deviation of the hallux with a dorsal medial eminence," "pain on palpation over the third interspace with pain on compression of the metatarsals," a positive Mulder's click, and a "large

12

metatarsal angle deformity with the sesamoid interspace at 5." [R207]. Dr. Gabbay reported that he treated Plaintiff by injecting her neuroma with a sclerosing alcohol combination.[7] [R207]. He also told Plaintiff that "she might need 3-4 shots to completely destroy the nerve" and recommended that she stay off the foot as much as possible. [R207]. In the short term, the neuroma injection relieved ninety percent of the pain, [R206], but in June 2004, Plaintiff came back with more pain, and Dr. Gabbay found that she was symptomatic, [R205]. He gave her a cortisone shot. [R205]. In March 2005, Plaintiff again visited with complaints of pain in the ball of her foot and was treated with anti-inflammatories. [R204]. In May 2008, a few months before her hearing before the ALJ, Plaintiff visited Dr. Gabbay with complaints of a "painful bunion deformity, bilaterally, as well as painful tailor's bunion" and a "painful neuroma." [R197]. A previous cortisone shot had temporarily "helped a little bit," but Plaintiff had a recurrence. [R197]. Dr. Gabbay observed that Plaintiff presented "with severe lateral deviation of the hallux with a dorsal medial eminence," "[s]evere flaring of the fifth metatarsal head," "[a]dductovarus deformity of the fifth digit," "[e]rythema

---

[7] This procedure is used to cause neurolysis in the nerve transmitting the pain. *See* Gary Dockery, *Is Injection Therapy the Best Solution for Foot Neuromas?* 15:1 Podiatry Today (Jan. 2002), *available at* http://www.podiatrytoday.com/article/87. "Neurolysis" refers to "[d]estruction of the nerve tissue" or "[f]reeing of a nerve from inflammatory adhesions." 1202 PDR Med. Dictionary (1st ed. 1995).

13

overlying the medial eminence, . . . lateral eminence of the fifth metatarsal head," "[c]ontracture of the lesser digits," "[r]etrograde buckling and anterior migration of the fat pad," "[p]ain at the third interspace," "[p]ositive Mulder click," and "[p]ain with compression [and] with lateral squeeze." [R197]. X-rays showed "increase in the intermetatarsal angle [and] the hallux abductus angle" and "[s]evere increase in the lateral deviation angle [and] the fifth metatarsal bowing." [R197]. Dr. Gabbay started sclerosing alcohol injections and discussed two possible surgeries with Plaintiff. [R197]. Thus, the medical records from Plaintiff's treatment with Dr. Gabbay show that he provided at least moderately invasive treatment (sclerosing nerves), [R197, 207]; imposed functional limitations (recommending that Plaintiff stay off her feet as much as possible), [R207]; and recommended that Plaintiff consider surgery, [R197].

As a consequence, the ALJ's decision to accord little weight to Dr. Fortson's opinion rests only on evidence that (1) in 2005, Plaintiff has success with physical therapy; (2) on November 28, 2005, Plaintiff demonstrated only mild pain around the neck and shoulders; (3) in 2006, injections alleviated hip and knee pain, and neurological and musculoskeletal examinations were normal with no pain, full range of motion, and 5/5 strength throughout; and (4) a June 2008 lumbar MRI showed

14

multiple-level degenerative disc disease with generally mild bulges, no definite cord or nerve root compression, and only mild facet degenerative changes. [R16-17]. The Court finds that this record evidence is not substantial support for discounting the standing and walking limitations set out in Dr. Fortson's June 2008 Functional Capacity Evaluation, which Dr. Fortson issued shortly after Dr. Gabbay's finding that Plaintiff had severe foot deformities.[8] The Court therefore **GRANTS** Plaintiff's renewed motion for reconsideration.

### *IV.  Conclusion*

For the reasons above, Plaintiff's second motion for reconsideration is **GRANTED**. [Doc. 20]. Accordingly, the Clerk is **DIRECTED** to **RENEW** Plaintiff's first motion for reconsideration. [Doc. 17]. The renewed motion for reconsideration is also **GRANTED**.

The Commissioner's final decision denying benefits to Plaintiff is hereby **REMANDED** to the Commissioner for further consideration of Plaintiff's claims

---

[8] The Court also notes that the non-examining doctors who indicated that Plaintiff could stand and/or walk for 6 hours in an 8-hour day and therefore could perform modified medium work rendered their opinions in December 2005 and April 2006; thus, they could not have considered Plaintiff's May 2008 condition. [*See* R157, 186-87].

consistent with this Order.  The Clerk is **DIRECTED** to enter judgment in Plaintiff's favor.

**IT IS SO ORDERED**, this the 27th day of February, 2013.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**